**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| In re | : | Chapter 13 |
|     MAUREEN H. GISONDI | : | |
|         Debtor. | : | Bankruptcy No. 08-14444-mdc |
| | : | |
| MAUREEN H. GISONDI | : | |
|         Plaintiff, | : | |
| v. | : | Adversary No. 08-170-mdc |
| COUNTRYWIDE BANK, N.A., WELLS FARGO (SAMI II 2006-AR 7), COUNTRYWIDE HOME LOANS, INC., and CROSS COUNTRY FUNDING, LLC, | : | |
|         Defendants. | : | |

# **MEMORANDUM**

**I.   INTRODUCTION**

On May 18, 2012, this Court held a trial (the "Trial") addressing the remaining claims of Maureen Gisondi (the "Debtor") against Countrywide Bank, N.A. ("Countrywide Bank") and Wells Fargo (SAMI II 2006-AR 7) ("Wells Fargo," together with the Countrywide Bank, the "Defendants") for alleged violations of the Truth in Lending Act, 15 U.S.C. §1601 *et seq.* ("TILA") asserted by Count I of the Debtor's Amended Complaint dated April 6, 2009 (the "Amended Complaint"). At the close of the Debtor's case, the Defendants presented to this Court an oral motion for judgment on partial findings (the "Motion").

The Defendants identified five grounds for their Motion: (1) the Debtor's failure to meet her burden of establishing that she could obtain rescission from Wells Fargo or Countrywide Bank; (2) the Debtor's failure to meet her burden of establishing that she did not receive the required copies of the Truth in Lending Disclosure Statement and Notice of Right to Cancel (the "Disclosures"); (3) the Debtor's failure to meet her burden of establishing her title insurance overcharge claim; (4) the failure to disclose the yield spread premium paid to the mortgage broker does not, as a matter of law, constitute a

TILA violation; and (5) the Debtor's failure to establish her ability to tender the loan proceeds precluded her from advancing her rescission claim.

After this Court heard arguments from all parties and for the reasons stated on the record, this Court granted the Motion with regard to the Debtor's title insurance overcharge claim. This Court declined to rule on the issue of the credibility of the Debtor's testimony as it related to her burden of establishing that she did not receive the required copies of the Disclosures, took the remaining three issues under advisement, and invited the parties to submit briefs addressing the same.

This Court is now in receipt of the parties' respective briefs and the matters raised by the Motion are ripe for this Court's consideration.[1] As discussed below, this Court will:

1. grant the Motion as to Wells Fargo and dismiss with prejudice all claims against it because the Debtor has failed to establish that Wells Fargo holds any interest in the loan at issue;

2. deny the Motion as to Countywide Bank because the Debtor has presented sufficient evidence to establish that Countrywide Bank is the present holder of the Loan. Countrywide Bank will remain as a defendant in this matter and be permitted to present evidence rebutting the Debtor's claim that she may seek recourse against it;

3. grant the Motion and dismiss with prejudice the Debtor's TILA claim related to the alleged inaccuracy of the finance charge because Countrywide Bank was under no obligation to separately disclose the yield spread premium; and

4. deny the Motion based upon Debtor's alleged failure to establish her ability to repay the Loan because the Debtor's ability to tender the proceeds of the Loan is not a prerequisite to her right to exercise the remedy of rescission. *See, e.g. Sherzer v. Homestar Mortgage Services, et al.*, App. No. 11-4254, 2013 WL 425835 (3d Cir. Feb. 5, 2013) (recognizing that the right of rescission is exercised upon sending a notice to creditor).

---

[1] Consistent with Fed. R. Civ. P. 52(a), as incorporated by Bankr. P. 7052, the following discussion constitutes this Court's findings of fact and conclusions of law. This memorandum incorporates the factual findings contained in this Court's opinion dated April 2, 2009, previously issued in this proceeding. *Gisondi v. Countrywide Home Loans, Inc., et al. (In re Gisondi)*, Adv. No. 08-170, 2009 WL 2913424 (Bankr. E.D. Pa. Apr. 2, 2009, Raslavich, Ch. J.) (the "Prior Opinion").

2

Consistent with this Court's ruling, Countrywide Bank will be permitted to present its rebuttal case at a continuation of the Trial.

## II. BACKGROUND

The Debtor's claim relates to the refinancing of the Debtor's then existing indebtedness on her home located at 2561 Skippack Pike, Lansdale, PA (the "Property") whereby Countrywide Bank provided to the Debtor a loan in the amount of $337,500 (the "Loan"). Closing of the transaction occurred at the Property on August 10, 2006 (the "Closing"), and is evidenced by an Adjustable Rate Note in the amount of $337,500 issued by the Debtor to Countrywide Bank dated August 10, 2006 (the "Note"), and a Mortgage dated August 10, 2006 (the "Mortgage"), that granted to Mortgage Electronic Registration Systems, Inc. ("MERS"), as the nominee of Countrywide Bank, a security interest in the Property to secure the Debtor's repayment of the Loan.

The Debtor admits that at the Closing she executed the following documents: (i) a Loan Application Disclosure Acknowledgement; (ii) a Loan Application; (iii) an Adjustable Rate Rider; (iv) an Adjustable Rate Note; (v) a Payoption Adjustable Rate Mortgage Loan Program Disclosure; (vi) a Truth-in-Lending Disclosure Statement; (vii) a Settlement Statement; (viii) a Prepayment Penalty Addendum; and (ix) a Notice of Right to Cancel (collectively, the "Loan Documents"). Other than with regard to the accuracy of the finance charge and the yield spread premium, the Debtor does not take issue with the form or substance of any of the Loan Documents. Rather, she claims that Countrywide Bank did not provide her copies of the Loan Documents for her personal records as required by 12 C.F.R. §226.17(a)(1). Despite signing each of these documents to acknowledge her receipt, the Debtor testified at the Trial that at the conclusion of the closing the title agent left her home without providing her any copies of the Loan Documents. She claims that it was not until discovery in these proceedings that she finally received copies of each document.

As is the case with many disputes arising from the business practices of the mortgage industry, the present relationship between the various parties to the Loan has been less than clear. This litigation has been pending for nearly four years. Originally, the parties labored under the assumption that

Countrywide Bank was the holder of the Loan. As memorialized by Chief Judge Raslavich's Prior Opinion, the parties later realized that Countrywide Bank was not the holder because Wells Fargo had purportedly taken assignment of the Loan. *In re Gisondi*, Bky. No. 08-14444, 2009 WL 2913424 (Bankr. E.D. Pa. Apr. 2, 2009) (discussing Wells Fargo's potential TILA liability as assignee of the Loan). However, Wells Fargo now maintains that, contrary to its prior representations to this Court, it never took assignment of the Loan. Instead, Wells Fargo contends that the mortgage was assigned to Bank of New York Mellon ("BONY").

From the record now before this Court, this Court can only determine that the Loan was originated by Countrywide Bank. The parties appear to agree that Countrywide Bank is no longer the holder of the Loan. However, this Court is not in receipt of any evidence sufficient to establish the identity of the Loan's present holder. The parties have not submitted to this Court any documents evidencing the assignment of the Note from Countrywide Bank to any other party or the assignment of the Mortgage from MERS to any other party. However, the evidence before the Court does not establish that Wells Fargo was a holder of the Loan.

### III.    DISCUSSION

At the close of the Debtor's case, the Defendants moved for judgment on partial findings pursuant to Fed. R. Civ. P. 52, as made applicable to this proceeding by Fed. R. Bankr. P. 7052. Rule 52 permits a court, in its discretion, to enter judgment against a party after that party's case has been fully presented to a court. *Payne ex rel. Estate of Payne v. Equicredit Corp. of America*, 71 Fed. Appx 131, 133 (3d Cir. 2003). The purpose of Rule 52 motions is to conserve the time and resources of the parties and of this Court by obviating the need for moving party to present its rebuttal case where the nonmoving party has failed to present evidence sufficient to carry its ultimate burden of persuasion. *In re Machne Menachem, Inc.*, 425 B.R. 749, 755-56 (Bankr. M.D. Pa. 2010); 9 Moore's Federal Practice 52–124, ¶52.50[2]. This Court should enter a judgment pursuant to Rule 52(c) only if, after a party completes presentation of its evidence, this Court determines such evidence, standing alone, is insufficient to sustain the party's claim. *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 272 (3d Cir. 2010); *Giza v. Amcap Mortgage, Inc.*,

4

*et al. (In re Giza)*, 458 B.R. 16, 23-24 (Bankr. D. Mass 2011) (addressing pursuant to a Rule 52 motion the sufficiency of debtor's evidence submitted in support of alleged TILA violation).

In evaluating the sufficiency of a party's evidence, this Court draws no inferences in favor of either party and applies "the same standard of proof and weighs the evidence as it would at the conclusion of the trial." *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 272 (3d Cir. 2010). In weighing whether a party has met its factual burdens by a preponderance of the evidence, this Court is entitled to make determinations of credibility where appropriate. *Parker v. F.D.I.C.*, 447 Fed. Appx. 332, 335 (3d Cir. 2011) (holding that court may make credibility determinations to determine whether borrower's unsubstantiated testimony is sufficient to rebut presumption of receipt); *EBC, Inc. v. Clark Bldg. Systems, Inc.*, 618 F.3d 253, 273 (3d Cir. 2010); *Parker v. Long Beach Mortg. Co.*, 534 F.Supp.2d 528, 535 (E.D. Pa. 2008).

The Defendants' Motion seeks judgment on Count I of the Debtor's Complaint which states a claim for rescission against both Countrywide Bank and Wells Fargo based upon Countrywide Bank's alleged violations of TILA's disclosure requirements. TILA was enacted "to assure meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him ... and to protect the consumer against inaccurate and unfair" practices. 15 U.S.C. §1601; *Rossman v. Fleet Bank (R.I.) N.A.*, 280 F.3d 384, 390 (3d Cir. 2002). It is a remedial statute and is to be liberally construed in favor of borrowers. *Smith v. Fidelity Discount Co.*, 898 F.2d 896, 899 (3d Cir.1990). TILA requires strict liability in favor of the consumers when mandated disclosures have not been made. 15 U.S.C. §1640(a); *Thomka v. A.Z. Chevrolet Inc.*, 619 F.2d 246, 249–50 (3d Cir. 1980).[2]

---

[2] TILA tasks the Board of Governors of the Federal Reserve System to promulgate regulations to effectuate the implementation of TILA's disclosure requirements which have been set forth as provided by Regulation Z. Regulation Z provides that "[t]he creditor shall make the disclosures required by this subpart clearly and conspicuously in writing, in a form that *the consumer may keep*." 12 C.F.R. §226.17(a)(1) (emphasis added). With regard to the borrower's right to rescission, "a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind." 12 C.F.R. §226.23(b)(1). TILA also requires a lender to disclose the finance charge associated with a home mortgage transaction and deems the finance charge to be a material disclosure. 15 U.S.C. §§ 1602(u) & 1638(a)(3)-(8), (11). Not only must a lender disclose the finance charge, the disclosed finance charge must itself be accurate. *Roberts v. Fleet Bank (R.I.)*, 342 F.3d 260, 266 (3d Cir. 2003); *Payne ex rel. Estate of Payne v. Equicredit Corp. of America*, 71 Fed.Appx. 131, 134 (3rd Cir. 2003).

To meet its initial burden, a TILA claimant must provide some evidence of a lender's noncompliance with its disclosure obligations. *In re Lowenstein*, 459 B.R. 227, 239 (Bankr. E.D. Pa. 2011). The Debtor premises her TILA claims on (i) Countrywide Bank's alleged failure to provide her copies of documents evidencing the terms of the Loan, inclusive of proper notice of her right to rescind, and (ii) Countrywide Bank's failure to properly calculate the amount of the Loan's finance charge.

**Whether the Debtor May Obtain Rescission from Countrywide**

The Debtor seeks rescission under TILA from Wells Fargo and Countrywide Bank.[3] TILA only permits a consumer borrower to obtain relief from a creditor and its assignees. 15 U.S.C. §§ 1640, 1641(a) (defining liability of assignees for TILA violations); *Stewart v. BAC Home Loans Servicing, LP*, Civ. No. 10-2033, 2011 WL 862938, at *3 (N.D. Ill. Mar. 10, 2011) (dismissing TILA claim brought against a party that was not a creditor or assignee); *Longo v. First Nat. Mortg. Sources*, Civ. No. 07-4372, 2010 WL 415330, at *2 (D.N.J. Jan. 29, 2010) ("generally, only creditors and assignees can be liable under the TILA for violative acts or omissions").[4] In addition, for this Court to grant the remedy of rescission, the present holder of the Loan must be a party to this action. Therefore, for the Debtor to be entitled to rescission from either Countrywide Bank or Wells Fargo, the Debtor must establish that one or the other (or both) is the present holder of the Loan. 15 U.S.C. §1641(a).

Throughout this proceeding, the parties have operated with confusion as to the identity of the current holder of the Debtor's Loan. Initially, the Plaintiff named Countrywide Bank as the current

---

[3] The parties do not contest that the Loan "was sufficiently consumer-oriented to put it within the ambit of the TILA." *St. Hill v. Tribeca Lending Corp.*, 403 Fed. Appx. 717, 720 (3d Cir. 2010).

[4] TILA defines a "creditor" as the entity to which "the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness." *Brodo v. Bankers Trust Co.*, 847 F.Supp. 353, 359 (E.D. Pa. 1994) (citing 15 U.S.C. §1602(f). Subsequent assignees are protected from liability for disclosure violations unless such disclosure violations were "apparent on the face of the disclosure statement." 15 U.S.C. §1641(a). However, assignees may be held liable for a borrower's rescission claim, and, for purposes of a court's ability to order such relief, assignees must be a named defendant. *Long v. JP Morgan Chase Bank, Nat. Ass'n*, 2012 WL 220791, at *6 (D. Haw. Jan. 25, 2012) ("Any remedy of rescission Plaintiff may have must be invoked against the current holder of the mortgage loan."); *Stewart v. BAC Home Loans Servicing, LP*, Civ. No. 10-2033, 2011 WL 862938, at *3 (N.D. Ill. Mar. 10, 2011); *In re Meyer*, 379 B.R. 529, 551 (Bankr. E.D. Pa. 2007) (dismissing rescission claim where complaint did not name present holder of loan and expiration of three-year statute of repose made amendment futile); *Thompson v. Saxon Mortgage, Inc. (In re Thompson)*, Adv. No. 04-9037, 2005 WL 6489247 (Bankr. N.D. Ga. Mar. 15, 2005) (recognizing that current holder of loan may be required to be before court in order for court to grant the remedy of rescission).

6

holder of the Loan. Later, the Defendants, in their Answer, identified Wells Fargo as the current holder of the loan. After much delay by the Debtor, the Debtor was permitted by this Court to amend its complaint to add Wells Fargo as a defendant. *In re Gisondi*, Bky. No. 08-14444, 2009 WL 2913424 (Bankr. E.D. Pa. Apr. 2, 2009). Approximately a year later, the Defendants retracted their admission and stated that in fact the true holder of the Loan was and remains BONY. Despite being granted time to amend her complaint to add BONY as a defendant and to conduct discovery from BONY, the Debtor did neither.

The identity of the present holder of the Loan is integral to the sufficiency of the Debtor's claim for rescission. *Long v. JP Morgan Chase Bank, Nat. Ass'n*, 2012 WL 220791, at *6 (D. Haw. Jan. 25, 2012) recognizing that that remedy of rescission must be invoked against the current holder of a mortgage loan); *Stewart v. BAC Home Loans Servicing, LP*, Civ. No. 10-2033, 2011 WL 862938, at *3 (N.D. Ill. Mar. 10, 2011); *In re Meyer*, 379 B.R. 529, 551 (Bankr. E.D. Pa. 2007) (dismissing rescission claim where complaint did not name present holder of loan and expiration of three-year statute of repose made amendment futile); *Thompson v. Saxon Mortgage, Inc. (In re Thompson)*, Adv. No. 04-9037, 2005 WL 6489247 (Bankr. N.D. Ga. Mar. 15, 2005) (recognizing that current holder of loan may be required to be before court in order for court to grant the remedy of rescission). The Defendants argue that BONY, as the present holder of the Loan, is a necessary party and that its absence from this proceeding prevents this Court from granting the remedy of rescission. However, as the record now stands, this Court is without any evidence that Countrywide Bank effected any assignment of its interest to any party, including BONY.

The Debtor has presented sufficient evidence to establish that Countrywide Bank was the originator of the Loan. The record presently contains no record of Countrywide Bank or MER's assignment of their interest in the Loan. As such, this Court will assume, for the purposes of this Motion, that they retain their original interests. For this reason, this Court will deny the Motion to the extent that it seeks dismissal of the Debtor's rescission claim against Countrywide Bank.

**Whether the Debtor May Obtain Rescission from Wells Fargo**

With regard to Wells Fargo, the Debtor has not presented evidence that Wells Fargo is the present

7

holder of the Loan.  The Debtor argues she is entitled to rescission because of Wells Fargo's status as the Loan's "Master Servicer."  The Debtor contends that, although a Pooling and Servicing Agreement dated August 1, 2006 (the "PSA") identifies Wells Fargo as the Loan's "master servicer," Wells Fargo's rights and obligations under the PSA render it more than a "servicer." [5]  Even if the Debtor's argument was correct, the Debtor has failed to prove two threshold facts: (1) that the PSA relates in any way relate to the Debtor's Loan, and (2) that Wells Fargo holds any interest in the Debtor's Loan.  The PSA identifies Structured Asset Mortgage Investments II Inc. ("SAMI II") as the "Depositor."  The PSA further provided that SAMI II transferred and assigned to the Trust without recourse all of its right, title and interest to the Mortgage Loans in the Mortgage Loan Schedule.  PSA, §2.01(a).  J.P. Morgan Chase, N.A. (now BONY) was appointed as Trustee for the Trust. PSA, §1.01.  As stated by §2.01 of the PSA, the Depositor was obligated to assign its interests in the mortgage loans that formed the corpus of the trust established by the PSA.  However, the Debtor has presented no evidence showing that the Loan is among the assets assigned to SAMI II.

As previously noted, this proceeding has been pending for nearly four years and the Debtor has been granted multiple opportunities to conduct discovery from the Defendants as well as to add BONY to this proceeding.  However, the record before this Court contains no documents evidencing the chain of title from either Countrywide Bank or MERS to SAMI II.  The ultimate burden of proof on this issue rests with the Debtor.  Without evidence demonstrating a chain of title from Countrywide Bank or MERS to SAMI II or the trust created by the PSA, this Court cannot determine whether the Loan is among the portfolio of loans held and administered pursuant to the PSA.

Due to the Debtor's failure to establish that Loan is among the assets administered by Wells

---

[5] This Court doubts that a party's status as a master servicer would cause it to lose the benefit of the exclusion of liability provided to servicers by 15 U.S.C. §1641(f).  Servicers are not liable for TILA claims. 15 U.S.C. §(f)(1); *In re Hopkins*, 372 B.R. 734, 740 n.1 (Bankr. E.D. Pa. 2007).  "A 'master servicer' means 'the owner of the right to perform servicing, which may actually perform the servicing itself or may do so through a subservicer.'  24 C.F.R. §3500.21(a)." *In re Meyer*, 379 B.R. 529 (Bankr. E.D. Pa. 2007).  The various rights and obligations provided to Wells Fargo by the PSA appear to be wholly consistent with and necessary for the performance of the administrative functions required of servicers. *See, e.g., Hubbard v. Ameriquest Mortg. Co.*, 624 F.Supp.2d 913, 917-18 (N.D. Ill. 2008) (holding that for a servicer to be designated as an "owner of the obligation" the servicer must have an interest in the obligation greater than what is necessary for the performance of their role in the administration of the loan).

Fargo pursuant to the PSA, this Court will grant the Motion and dismiss all claims against Wells Fargo. By failing to document the chain of title from Countrywide to the PSA, the Debtor has failed to establish that, even if the Debtor may obtain rescission from Wells Fargo due to its status as the PSA's master servicer, Wells Fargo has any interest in the Loan. *Cisneros v. Instant Capital Funding Group, Inc.*, 263 F.R.D. 595, 609 (E.D. Cal. 2009) (dismissing defendant from TILA litigation where the defendant was not proven to be a party to the underlying transaction); *Boles v. Merscorp, Inc.*, Civ. No. 08-1989, 2008 WL 5246038, at *3 (C.D. Cal. Dec. 12, 2008) (dismissing rescission claim that was brought against a party that was not the current holder of the loan); *Bills v. BNC Mortg., Inc.*, 502 F.Supp. 2d 773, 777 (N.D. Ill. 2007) (dismissing TILA claim for rescission against party because party no longer held an interest in the loan); *In re Hopkins*, 372 B.R. 734, 751 (Bankr. E.D. Pa. 2007) (recognizing that TILA claimant is entitled to relief on rescission claim from the current holder as well as prior assignors).

**Receipt of the Loan Documents**

The Debtor alleges that Countrywide Bank violated TILA by failing to provide her with copies of the Loan Documents. As evidence of the Debtor's receipt of the Loan Documents, the Defendants have produced signed copies of the Loan Documents acknowledging receipt. The Debtor does not deny that she in fact signed the documents. Rather, she claims that subsequent to her signing of the Loan Documents the title agent took them with him without providing her copies. As evidence of the Debtor's non-receipt of the Loan Documents, the Debtor relies on her testimony and that of her relative, James Cantania. However, the relative testified that he attended only a portion of the Closing, and left prior to its completion.

As recognized by the Third Circuit, "when borrowers sign a document acknowledging receipt of notice, as here, there is a rebuttable presumption that the lender provided the required notice." *Siffel v. NFM, Inc.*, Civ. No. 09-3850, 2010 WL 2747476, at *1 (3d Cir. Jul. 13, 2010) (citing 15 U.S.C. §1635(c)). To defeat this presumption, the Debtor may rely on her testimony. *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 189-90 (3d Cir. 2011). However, before the presumption may be rebutted, the fact finder must determine that such testimony is credible. *Parker v. F.D.I.C.*, 447 Fed.

9

Appx. 332, 336 (3d Cir. 2011) (holding that district court's determination that borrower's testimony must be credible to rebut presumption arising from signed acknowledgement of receipt of notice). Even if this Court ultimately finds the Debtor's testimony to be credible, this Court notes that the Debtor retains the ultimate burden of proving by a preponderance of the evidence that she did not receive the Loan Documents. *Cappuccio v. Prime Capital Funding LLC*, 649 F.3d 180, 191-92 (3d Cir. 2011). Consistent with this Court's discretion and as it advised the parties at the close of the Trial, this Court will wait until the close of the Defendants' case to determine whether the preponderance of the evidence, including the relative credibility of all witnesses, establishes that the Debtor did not receive the Loan Documents.

**Accuracy of the Finance Charge**

In addition to alleging non-receipt of the required disclosures, the Debtor bases her rescission claim on the allegation that the finance charge disclosed in the Loan Documents was materially inaccurate. Specifically, the Debtor claims that the finance charge was inaccurate for two reasons: (i) the failure to disclose a "yield spread premium" paid to a mortgage broker; and (ii) a title insurance overcharge. At the close of the Debtor's case, this Court dismissed the Debtor's claims relating to the title insurance overcharge[6] and reserved for its consideration whether, as a matter of law, the Debtor's stated a claim for rescission based upon the failure to disclose a yield spread premium.[7]

---

[6] This Court found that the Debtor did not set forth any evidence that would establish that the amount of the title insurance charge caused the finance charge to be materially inaccurate. For purposes of determining whether the finance charge is materially inaccurate, only the amount of the title insurance overcharge may be considered. *See McCutcheon v. America's Servicing Co.*, 560 F.3d 143, 148 (3d Cir. 2009) (stating "counting an entire fee as a violation of TILA when only part of the charge is not bona fide would lead to absurdly inconsistent results"). Even if a finance charge does include an overcharge, the finance charge "shall be treated as being accurate ... if ... the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended...." 15 U.S.C. §1605(f)(2); *see also McCutcheon*, 560 F.3d at 147-49. Here, the amount of the Loan was $337,500.00. The tolerance for accuracy of the Loan was $1,687.50 ($337,500.00 * .5% = $1,687.50). The amount of the title insurance charge was $1,891.67. Without any evidence to establish what portion, if any, of the Loan's title insurance charge was excessive, this Court is without any basis to infer whether the title insurance charge caused the finance charge to be materially inaccurate.

[7] A "finance charge" is a term of art defined by both TILA and Regulation Z. As defined by TILA, the finance charge is composed of "the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit..." 15 U.S.C. §1605(a). Regulation Z defines a "finance charge" as "the cost of consumer credit as a dollar amount" and provides that, if the finance charge is proved to be materially inaccurate as to certain "material disclosure" items, the rescission period may be extended to three years. *See* 12 C.F.R. §226.4(a); *see also Davis v. Deutsche Bank Nat. Trust Co.*, Civ. No. 05-4061, 2007 WL 3342398, at *3 (E.D. Pa. 2007). A finance charge may be considered

The Defendants argue that, as a matter of law, Countrywide Bank was under no obligation to separately disclose the yield spread premium. This Court agrees. As a matter of law, the Debtor's claim based on the non-disclosure of the yield spread premium is without merit. Countrywide Bank was under no obligation to separately disclose the yield spread premium. *See Stump v. WMC Mort. Corp.*, Civ. A. No. 02-326, 2005 WL 645238 (E.D. Pa. March 16, 2005) (stating the "Federal Reserve Board has clarified that fees paid to a broker as a yield spread premium that are already included in the finance charge, either as interest or as points, should not be double counted on the TILA Disclosure Statement") [internal quotations omitted]; *see also In re Meyer*, 379 B.R. 529 (Bankr. E.D. Pa. 2007) ("[i]n this District, a yield spread premium is not required to be separately disclosed as a finance charge because it is already part of the interest component."). For this reason, this Court will grant the Motion and dismiss the Debtor's claims relating to the nondisclosure of the yield spread premium.

**The Debtor's Inability to Tender the Loan Proceeds**

The Defendants argue that, even if the Debtor has presented evidence of a TILA violation that entitles her to rescind the Loan, she is not entitled to the remedy because she is unable to tender the proceeds of the Loan. The Defendants characterize the tender obligation as a condition precedent to the availability of the right to rescind. This Court believes the Defendants go too far.

The Debtor's purported obligation to tender the proceeds of the Loan is derived from the text of Regulation Z and 15 U.S.C. §1635(b) that provide for the procedure in the event that a consumer exercises her right to rescind a transaction. In relevant part, Regulation Z reads:

> (d) Effects of rescission.
>
> (1) When a consumer rescinds a transaction, the security interest giving rise to the right of rescission becomes void and the consumer shall not be liable for any amount, including any finance charge.
>
> (2) Within 20 calendar days after receipt of a notice of rescission, the creditor shall return any money or property that has been given to anyone in connection with the transaction and shall take any action necessary to reflect the termination of the security interest.

---

materially accurate if "the amount disclosed as the finance charge does not vary from the actual finance charge by more than an amount equal to one-half of one percent of the total amount of credit extended..." 15 U.S.C. §1605(f)(2).

11

(3) If the creditor has delivered any money or property, the consumer may retain possession until the creditor has met its obligation under paragraph (d)(2) of this section. When the creditor has complied with that paragraph, *the consumer shall tender the money or property to the creditor or, where the latter would be impracticable or inequitable, tender its reasonable value*. At the consumer's option, tender of property may be made at the location of the property or at the consumer's residence. Tender of money must be made at the creditor's designated place of business. If the creditor does not take possession of the money or property within 20 calendar days after the consumer's tender, the consumer may keep it without further obligation.

(4) *The procedures outlined in paragraphs (d)(2) and (3) of this section may be modified by court order*.

12 CFR §226.23(d) (emphasis added).

Similarly, §1635(b) provides:

(b) Return of money or property following rescission

When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within 20 days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, *the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value*. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within 20 days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it. *The procedures prescribed by this subsection shall apply except when otherwise ordered by a court*.

15 U.S.C. §1635(b) (emphasis added).

Contrary to the Defendants' characterization, a borrower's ability to rescind a transaction is not contingent upon a borrower having the capacity to tender the proceeds of the loan. This Court recognizes that the default procedure for rescission does require a borrower to tender loan proceeds in order to entitle a borrower to the remedy of rescission. *Sherzer v. Homestar Mortgage Services, et al.*, App. No. 11-4254, 2013 WL 425835 (3d Cir. Feb. 5, 2013) (recognizing that the right of rescission is exercised upon sending a notice to creditor); *Jobe v. Argent Mortg. Co., LLC*, 373 Fed. Appx. 260, 262 (3d Cir. 2010) (recognizing that courts have the discretion to condition rescission on the ability of the borrower to tender

12

proceeds of loan); *Garsh v. Wells Fargo Bank, N.A.*, Bky. No. 11-21543, 2012 WL 1207220, at *6 (Bankr. D.N.J. Apr. 9, 2012) (recognizing that "TILA and Regulation Z authorize the Court to modify the process of tender by order")). Regulation Z and §1635(b) however specifically recognize that the rescission procedure may, in this Court's discretion, be modified. 12 CFR §226.23(d)(4) (stating the default procedures "may be modified by court order"); 12 U.S.C. §1625(b) (stating the default procedures shall apply "except when otherwise ordered by a court."). Relying on the discretion provided pursuant to §226.23(d)(4), courts have permitted borrowers to pay their tender obligation over a period of time. *WMC Mortg. LLC v. Baker*, Civ. No. 10-3118, 2012 WL 628003, at *15 (E.D. Pa. Feb. 28, 2012); *In re Stuart*, 367 B.R. 541, 552 (Bankr. E.D. Pa. 2007) ("Some courts have invoked their equitable discretion to grant the consumer the opportunity to pay the Consumer's Tender Obligation over an extended period of time, in effect, restructuring the mortgage to take into account the elimination of the finance charges as a result of the rescission of the transaction.").

Because this Court finds that a borrower's inability to tender loan's proceeds is not a condition precedent to the right to rescission, this Court finds that the Debtor's admitted inability to tender the Loan's proceeds is not necessarily fatal to her rescission claim. Because this Court has declined to determine that the Debtor did not in fact receive the Loan Documents, this Court finds resolution of the tender issue to be premature. If Countrywide Bank does not rebut the Debtor's evidence that it failed to provide her with copies of the Loan Documents and that the Debtor timely exercised her right of rescission, this Court will then consider how the Debtor may comply with her tender obligation.

**IV.    CONCLUSION**

Based on the record before this Court and for the reasons stated herein, this Court will (1) grant the Motion and dismiss, with prejudice, Wells Fargo as a party to this proceeding as the Debtor has failed to produce any evidence showing that she is entitled to seek rescission from Wells Fargo, (2) grant the Motion and dismiss the Debtor's TILA's claim against the Defendants based upon the allegation that the disclosed finance charges was materially inaccurate. With regard to the Debtor's rescission claim against Countrywide Bank, this Court will exercise its discretion and refrain from rendering judgment until the

13

close of all evidence. This Court will schedule a date to allow Countrywide Bank to present its rebuttal evidence with regard to whether the Debtor's remaining claim.

An Order consistent with this Opinion will be entered.

Dated: February 26, 2013

_____
MAGDELINE D. COLEMAN
UNITED STATES BANKRUPTCY JUDGE